UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:11-CR-15-GFVT-HAI-3 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| MICKEY ALLEN BROWN, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 1051), the Court considers reported violations of supervised release conditions by Defendant Mickey Allen Brown. This is his second revocation.

**I.**

Judge Van Tatenhove entered a judgment against Defendant in September 2012 after he pleaded guilty to one count of conspiracy to manufacture 500 grams or more of a methamphetamine mixture (21 U.S.C. §§ 841(a)(1), 846). D.E. 611. He was sentenced to 110 months of imprisonment and five years of supervised release. *Id*. at 2-3. Defendant was first released from custody on April 12, 2017.

On October 30, 2019, the United States Probation Office ("USPO") informed the Court that, on October 11, a urine sample from Defendant tested positive for methamphetamine via instant testing device, and Defendant made a written admission to using methamphetamine. D.E. 997. Defendant then began an out-patient drug abuse treatment program. *Id*. At a follow-up appointment on October 18 at the Probation Office, a second urine specimen tested negative.

Defendant reported "he had been having issues with his live-in girlfriend." He agreed to submit to weekly drug testing for the next four months. *Id.* Judge Van Tatenhove approved the USPO's request for no revocation but an added condition requiring "weekly drug testing for the next four months at the direction and discretion of the probation officer." *Id.*

On January 28, 2020, the USPO initiated revocation proceedings after Defendant, on January 17, submitted a urine specimen that tested positive for methamphetamine. Defendant stipulated to using and possessing a controlled substance other than as prescribed by a physician and to committing the crime of methamphetamine possession. D.E. 1013 at 2-3. Defendant's release was revoked and he was sentenced to twelve months of incarceration followed by 24 months of supervision to include, at the outset, six months of inpatient drug abuse treatment. D.E. 1019. Defendant was released again on January 28, 2021.

## II.

On May 25, 2021, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a single violation. According to the Report,

> On February 8, 2021, per his conditions of supervision, Brown entered the inpatient substance abuse treatment program at Redemption Road Recovery, in Gray, Kentucky. On February 26, 2021, Brown was unsuccessfully discharged due to a verbal altercation (non-physical) between him and another participant. Due to the facility's policy, both participants were discharged from the program. Redemption Road Recovery advised this Officer they would reassess Brown after 30 days to determine if they would permit him to return to their program.
>
> On March 2, 2021, Brown enrolled in the 30 day inpatient substance abuse treatment program at Recovery Works, in London, Kentucky. On April 5, 2021, he successfully completed the program, and subsequently reenrolled at Redemption Road Recovery on the same date to complete the remaining five (5) months of the court-ordered six (6) months of inpatient treatment.

2

> On May 19, 2021, Brown self-discharged from Redemption Road Recovery, prior to completion of the program, after engaging in a verbal altercation with staff. Prior to leaving the program, Brown had been compliant with program rules and had no written citations.
>
> On May 24, 2021, Brown reported to the U.S. Probation Office in London, Kentucky, as directed. He reported he left Redemption Road Recovery because he was concerned his verbal altercation with the staff would turn physical and result in harsher violations. Brown indicated the staff he had the verbal altercation with were recent graduates of the program and not the director or counselors. He produced a urine specimen which tested negative via instant testing device.

The report is accompanied by a Discharge Summary and a letter from Redemption Road. Violation #1 charges a violation of Special Condition #9, which requires compliance with and successful completion of the six-month inpatient drug abuse treatment program. This is a Grade C violation.

On June 9, 2021, the Court conducted an initial appearance on the Report pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure. D.E. 1060. Prior to that hearing, Defendant submitted a urine specimen that tested positive for methamphetamine. The Court advised Defendant that he would be facing two new charged violations (as eventually described in the Addendum). Defendant knowingly, voluntarily, and intelligently waived his right to a preliminary hearing on all three charged violations. *Id*. The government moved for interim detention. Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

On June 9, following the initial appearance, the USPO issued an Addendum to the Report. According to the Addendum:

> On June 9, 2021, this Officer met with Brown prior to his initial revocation hearing, and he produced a urine specimen which returned positive for

3

> the presence of methamphetamine and amphetamine, via instant testing device. When confronted with the drug test results, Brown admitted to using methamphetamine on June 7, 2021, and he subsequently signed a Positive Drug Test Admission Report (Prob 4), stating as such.

Based on these facts, the Addendum charges in Violation #2 a Grade C violation of the condition that requires Defendant to refrain from unlawful use of a controlled substance. The Addendum charges in Violation #3 a violation of the condition that Defendant not commit another federal, state, or local crime and the condition that Defendant not unlawfully possess a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On June 14, Defense counsel filed a certification that he had reviewed the Addendum with Defendant and the case could proceed to a final hearing. D.E. 1062.

The Court conducted a final hearing on June 25, 2021. D.E. 1064. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id*. He acknowledged under oath that he had used methamphetamine and left the treatment program. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report and the United States thus established Violations #1, #2, and #3 under the standard of § 3583(e).

### III.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis. Under

§ 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's underlying conviction is a Class A felony. This results in a five-year maximum period of incarceration upon revocation pursuant to § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under Section 7B1.1, Defendant's admitted conduct in Violation #3 qualifies as a Grade B violation. Given Defendant's criminal history category of VI (the category at the time of the conviction) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. U.S.S.G. § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction for a conspiracy to manufacture methamphetamine does not carry a maximum term of supervised release. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A)(viii).

## IV.

At the final hearing, the government requested revocation with 25 months of imprisonment, with no supervised release to follow. The defense requested revocation with 21 months of imprisonment, with no supervised release to follow. Both suggested revocation sentences are within the Guidelines Range of 21 to 27 months.

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

5

The government's arguments were nearly the same as last year's, with the added factor that this was now Defendant's second revocation. The government argued that, because Defendant had returned to meth use and had been unable to complete long-term drug addiction treatment, his breach of trust was aggravated, and he was not likely to be helped by additional supervision.

The government noted that Defendant's underlying federal conviction was for being a "smurf" in a methamphetamine manufacturing operation. Meth was Defendant's "drug of choice" at the time, and Defendant's meth addiction drove his participation in the conspiracy. Thus, the government argued there is a "close tether" between Defendant's violation conduct (which includes meth use), the underlying conviction, and his motivation for the underlying conviction. Turning to Defendant's history and characteristics, the government noted his "robust, extensive" Category VI criminal history, which includes DUIs, domestic violence, assault, marijuana trafficking, and burglary. Defendant also was on supervision when he committed the underlying offense.

The government argued that Defendant's breach of the Court's trust was great because this was Defendant's third set of violations (including the first violation, for meth use, for which no action was taken). Defendant has received leniency, including last year's revocation sentence, which was nine months below Defendant's Guidelines Range. That leniency was based on the expectation that Defendant would complete six months of treatment. But Defendant did not complete that treatment. The government argued that, now that Defendant has used meth yet again, he no longer appears amenable to long-term treatment.

In terms of mitigating facts, the government observed that Defendant did sign an admission to using meth, and he has stipulated to the violations. These facts counseled against a

6

sentence at the top of the Range. It was encouraging that Defendant completed the thirty-day program. But his enrollment in this program was an extension of "grace;" Defendant could have been revoked at that point. In terms of protecting the public and deterring additional criminal activity, the government argued that only incarceration could accomplish these goals.

The Defense argued that Defendant had made some improvement—this time, as opposed to last year, Defendant immediately admitted his meth use upon failing a drug test. That positive drug test was a surprise to everyone, the defense argued. The defense had no good argument for additional rehabilitation. Defendant faces a daily battle with addiction. And living on supervision is tough. Defendant is likable and a hard worker, but he is susceptible to pressure. The driving factor is the need to deter and protect. The defense argued that 21 months in prison would deter anyone "with a lick of sense."

The defense requested that Defendant be placed in a medical facility that can deal with a "mass" on Defendant's lung. The defense also requested that Defendant not be returned to FCI McDowell, because there have been issues with physical violence there.

Defendant addressed the Court. He said he had high standards for himself and thought he would be doing well. But he succumbed to his disease, which is his meth addiction. He said he could make no promise as to whether he might use meth again tomorrow, if given the chance. Concerning the issues at the treatment facility, Defendant explained that he had the choice between fighting and running and he decided to run from trouble. He left rehab.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke

Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued in favor of additional treatment. Defendant was ordered to treatment on his last revocation, but he did not complete the program due to anger issues.

The Court first considers the nature and circumstances of Defendant's underlying conviction. It appears that Defendant's methamphetamine addiction drove him to participate in a conspiracy to manufacture methamphetamine. His drug craving induced risky behavior and harmed his community.

The Court next considers Defendant's history and characteristics and the need to protect the public and deter future criminal conduct. Defendant's criminal history category of VI cannot be ignored. Defendant completed RDAP in prison. On his first term of release, he was a hard worker and compliant supervisee for two and a half years. The Court was appropriately lenient after he failed a drug test in October 2019. But then he used meth again despite being subject to weekly testing. Defendant was then shown leniency with a below-Guidelines sentence and a mandatory referral to inpatient treatment. That attempt to rehabilitate Defendant failed. He not only left treatment, but he also used meth again. Defendant's drug use and anger persist.

Accordingly, the need to protect the public and deter criminal conduct are weighty in this case. And the Court cannot at this point expect supervision to adequately deter criminal conduct.

Another factor is the need for additional training or treatment. This factor drove the Court's recommendation last time. But this time it barely factors at all. Despite having RDAP, living clean on his first supervision period, completing a 30-day program, and being enrolled in a six-month program, Defendant has returned to drug use. He told the Court he may very well use meth again tomorrow. As the parties recognize, Defendant cannot be expected to succeed at treatment, or even at supervision. To be clear, it is not that Defendant resisted treatment. Instead, he was dismissed due to issues with anger and irritability. His inability to control his emotions impeded the Court's best efforts to help him succeed.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach here is great because this is Defendant's third set of violation conduct. He was treated leniently and given special help last year. And his meth use is closely tied to the underlying conviction.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. Here, as usual, this factor is addressed by imposing a within-Guidelines sentence.

The Court finds that a sentence in the middle of the Range, 24 months, is appropriate. This sentence addresses the serious breach of the Court's trust and will provide deterrence and protection to the public. As argued by both sides, Defendant's addiction is such that he can not at this time be expected to benefit from treatment or to comply with conditions of supervision.

9

**VI.**

Based upon the foregoing, the Court **RECOMMENDS**:

(1) That, upon his stipulation, Defendant be found guilty of all three violations in the Report and Addendum.

(2) Revocation with a term of imprisonment of 24 months, with no supervised release to follow.

(3) As requested, to the extent possible, that Defendant be placed in a facility equipped to handle his medical needs.

(4) As requested, that Defendant not be returned to FCI McDowell.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FOURTEEN DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 29th day of June, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge